UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TYREE J. CULBERSON,

                Plaintiff,

v.

UNKNOWN SHINABARGAR, et al.,

                Defendants.

_____/

Case No. 1:24-cv-280

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge.  (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's claims against Defendants Lafler, Fosburg, and Schmalbach with prejudice for failure to state a claim upon which relief

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

may be granted under 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Shinabargar, Fitzgerald, Sanborn, Strickland, and Ortiz and his First Amendment retaliation claim against Defendant Shinabargar remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  Plaintiff sues Corrections Officers Unknown Shinabarger, Unknown Fitzgerald, Unknown Lafler, and Unknown Ortiz, Prisoner Counselor Unknown Sanborn, Sergeant Unknown Strickland, and Registered Nurses Unknown Fosburg and Angela Schmalbach in their individual capacities.

In his complaint, Plaintiff alleges that on November 13, 2023, he was transferred to ICF and was placed in Unit 1, Cell 28, which had feces, urine, and semen on the cell window, on the door with paper stuck on it, on top of and underneath the toilet, and behind the toilet on the wall.  Plaintiff also states that the cell did not contain a mattress.  Plaintiff complained to Defendant Shinabarger and told him that because he was refusing to help, Plaintiff would be writing a grievance on him.  (ECF No. 1, PageID.6.)  Defendant Shinabarger stated: "I don't give a f**k if you write a grievance, because if you do we won't clean sh*t, and since you wanna

4

threaten me with a grievance, I'm not feeding you sh*t either and you can sleep without a mattress see how you like that concrete." (*Id.* (asterisks added).) Defendant Shinabarger then shut Plaintiff's water off and told him that he could smell his own waste and said, "now grieve that n*gger." (*Id.*, PageID.7 (asterisks added).)

Later that day, Plaintiff informed Defendant Ortiz of the inhumane conditions and told him that he was feeling sick. Defendant Ortiz responded, "That's what you deserve … I'm not helping you, you're just going to have to suck it up." (*Id.*) Plaintiff stopped Defendant Strickland that evening during rounds and told him about the conditions in his cell. Defendant Strickland said that the cell should have been cleaned before Plaintiff arrived and told Plaintiff that he did not have any mattresses on hand. (*Id.*) Plaintiff continued to try and show Defendant Strickland the waste in his cell and Defendant Strickland said, "I can't help you but I think you're bullshitting me." (*Id.*) Plaintiff was forced to sleep without on the concrete floor while smelling feces and urine, which caused Plaintiff to throw up during the night. (*Id.*)

Plaintiff also complained about the conditions in his cell to Defendant Fitzgerald, who told Plaintiff that he was not Plaintiff's rock officer and walked away. (*Id.*, PageID.8.)

On the morning of November 14, 2023, Plaintiff stopped Defendant Sanborn during rounds and made him aware of the conditions in his cell. Defendant Sanborn replied that the cell should have been cleaned before Plaintiff was placed in it and that he could not provide Plaintiff with a mattress at that time. (*Id.*, PageID.7.)

5

Plaintiff continued to plead for help and Defendant Sanborn told Plaintiff that if he did not have any legal mail, he needed to continue his rounds. (*Id.*) Plaintiff then stated that he had not yet received his property and was without a toothbrush, toothpaste, shower shoes, underwear, or other necessities. (*Id.*, PageID.8.) Defendant Sanborn merely walked away. (*Id.*)

Plaintiff alleges that he began to suffer from pain in his hips and lower back, as well as migraines and on November 14, 2023, Plaintiff kited Defendant Fosburg seeking treatment. (*Id.*, PagID.9.) Plaintiff did not receive a response, so he submitted a kite to Defendant Schmalbach on November 16, 2023, stating that his pain had worsened to the point where he could not get off his bunk, and that he now had a burning rash on his thighs. (*Id.*, PageID.9–10.) Plaintiff states that he did not hear from medical for two weeks and that nothing was done to address his condition. Plaintiff asserts that he continues to suffer from pain, migraines, and a burning rash. (*Id.*, PageID.10.)

Plaintiff states that between November 13, 2023, and November 16, 2023, he made several complaints to Defendant Shinabarger about the fact that he had not received his personal property. Defendant Shinabarger refused to help Plaintiff, stating "How many times have I told you, you don't have sh*t coming from us, we hate inmates with assaults on officers in their file." (*Id.*, PageID.8 (asterisk added).) Plaintiff received his property on November 17, 2023. Plaintiff states that Defendant Lafler was the property officer and was responsible for getting Plaintiff's property to him after twenty-four hours. When Defendant Lafler interviewed Plaintiff, Lafler

stated that Plaintiff's property had not arrived at the prison until November 17, 2023, but Plaintiff asserts that this was untrue and that video will show that his property was unloaded when Plaintiff arrived at ICF on November 13, 2023.  (*Id.*)

On November 17, 2023, Defendant Lafler finally brought Plaintiff his property, which was contained in a locked footlocker.  Plaintiff states that he needed to have the padlock removed in order to have access to his property.  (*Id.*, PageID.8-9.) Plaintiff stopped Defendant Sanborn and asked to have the padlock removed, so Defendant Sanborn placed Plaintiff in cuffs and had him step into the hall and removed the padlock.  When Plaintiff reentered the cell, he immediately began to scream loudly.  Defendant Sanborn returned to the cell and asked what was wrong and Plaintiff pointed to the contents of his footlocker which were covered in excrement, semen, and maggots.  (*Id.*, PageID.9.)  Defendant Sanborn then had Plaintiff pack up and moved him to a cell that contained a mattress, which Plaintiff states proves he could have been given one prior to this date.  (*Id.*)

Plaintiff alleges that on November 20, 2023, between 8:00 a.m. and 10:00 a.m., the vacuum was brought to Plaintiff's old cell and used to suck up the "feces, urine, and semen" from his footlocker.  (*Id.*)

Plaintiff contends that Defendants violated his rights under the First and Eighth Amendments, and he seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly / Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Eighth Amendment

#### 1.    Defendants Shinabargar, Ortiz, Fitzgerald, Sanborn, and Strickland

Plaintiff alleges that Defendants Shinabargar, Ortiz, Fitzgerald, Sanborn, and Strickland were all deliberately indifferent to unsanitary conditions in Plaintiff's cell in violation of the Eighth Amendment.   The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.    Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).   The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."

*Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a

10

prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In *Taylor v. Riojas*, 592 U.S. 7, 7–8 (2020), the United States Supreme Court addressed a situation where the plaintiff-prisoner was confined in a cell was covered, nearly floor to ceiling, in large amounts of feces, including all over the floor, the ceiling, the window, the walls, and even in the water faucet, to the extent that the prisoner did not eat or drink for four days because of fear his food would be contaminated.  Correctional officers then moved the plaintiff to a second, frigidly cold cell, which was equipped with only a clogged drain in the floor to dispose of bodily wastes, prompting the plaintiff to hold his bladder for over 24 hours before involuntarily relieving himself, causing the drain to overflow and raw sewage to spill across the floor.  The cell also lacked a bunk, and because the plaintiff was confined without clothing, he was left to sleep naked in sewage.  *Id.*  The Court noted that the plaintiff was subjected to these conditions for a total of six days and concluded that this was sufficient to support a claim under the Eighth Amendment and to overcome the defendants' claim for qualified immunity.  *Id.* at 8.

In contrast, allegations amounting to relatively minor and temporary inconveniences do not rise to the level of an Eighth Amendment violation.  *See Foster v. Ohio*, No. 1:16-cv-920, 2018 WL 6726965, at *14 (S.D. Ohio Dec. 21, 2018) (recognizing that "the severity and duration of deprivations are inversely

proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while *substantial* deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration" (emphasis in original; further internal quotations omitted)).

Moreover, the Court notes:

> [W]hile "massive amounts" of feces pose a more obvious risk, the more garden-variety sanitation issues that Plaintiff alleges in combination with the absence of any allegation of physical injury also supports the conclusion that Plaintiff was not exposed to a substantial risk of serious harm.[6] *See, e.g.*, *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation where an inmate complained that he was exposed to raw sewage from an overflowed toilet in his cell for four days, but did not allege he suffered any harm); *Gofarth v. Sumner County*, 2013 WL 1943020 at *3 (M.D. Tenn. May 9, 2013) (confinement in cell with door covered with feces failed to state claim under 8th Amendment where plaintiff did not allege he became ill or suffered actual injury).

*Edge v. Mahlman*, No. 1:20-CV-892, 2021 WL 3725988, at *6 (S.D. Ohio Aug. 23, 2021), *report and recommendation adopted,* No. 1:20-CV-892, 2022 WL 20113138 (S.D. Ohio Mar. 18, 2022).

In this case, Plaintiff alleges that for a period of four days, from November 13, 2023, to November 17, 2023, he was confined in a cell with feces, urine, and semen on the cell window, on the door with paper stuck on it, on top of and underneath the toilet, and behind the toilet on the wall, without running water. Plaintiff also states that the cell did not contain a mattress. The cell conditions that Plaintiff portrays do not rise to the level of the conditions described in *Taylor v. Riojas*, 141 S. Ct. 52 (2020), where feces covered the walls and floors and were packed into the water faucet. However, Plaintiff does allege the presence of bodily fluids and feces, and asserts that he suffered from pain in his hips and lower back, as well as migraines and a burning

rash as a result of being confined in the cell.  The Court concludes that Plaintiff's Eighth Amendment claims against Defendants Shinabargar, Ortiz, Fitzgerald, Sanborn, and Strickland are not clearly lacking in merit and may not be dismissed on initial review.

### 2.    Defendant Lafler

As noted above, Plaintiff alleges that Defendant Lafler failed to give Plaintiff his property when it arrived at the prison on November 13, 2023, and that when he delivered Plaintiff's property four days later, he lied and stated that Plaintiff's property had not arrived at the prison until November 17, 2023.  However, the deprivation of personal property for a period of four days does not constitute a deprivation sufficient to implicate the Eighth Amendment.  *See, e.g.*, *Matthews v. Murphy,* No. 90-35458, 1992 WL 33902, at *4 (9th Cir. Feb. 25, 1992) (holding that an inmate's allegations that he was deprived of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately 34 days did not rise to the level of a constitutional violation); *Crump v. Janz,* No. 1:10-cv-583, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (denial of toothbrush and toothpaste for 34 days constitutes a mere temporary inconvenience); *Robertson v. McCray,* No. 03-22823-CIV, 2006 WL 2882502, at *7 (S.D. Fla. July 28, 2006) (failure to provide indigent kits containing hygiene items and envelopes, stamps and paper more than half the time over a two-year period did not violate the Eighth Amendment); *Fernandez v. Armstrong,* No. 3:02CV2252CFD, 2005 WL 733664, at *5–6 (D. Conn. Mar. 30, 2005) (the denial of toothpaste, toothbrush, shampoo and soap for 16 days did not rise to the level of an Eighth Amendment violation where plaintiff did not

allege any physical effects or injuries); *Holder v. Merline,* No. Civ. A. 05-1024 RBK, 2005 WL 1522130, at *6 (D.N.J. June 27, 2005) (three-week deprivation of a toothbrush and sneakers does not implicate the Eighth Amendment where no physical effects resulted).  Moreover, Plaintiff alleges no harm or risk of harm arising from his four-day deprivation.  *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (recognizing that the objective component of the Eighth Amendment test is typically not met by temporary deprivations that result in no physical injury); *James v. O'Sullivan,* 62 F. App'x 636, 639 (7th Cir. 2003) (recognizing that a 49-day deprivation of soap, toothbrush and toothpaste may impair basic levels of sanitation and hygiene only if prisoner health and safety is jeopardized); *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir. 1996) (holding that a 69-day denial of toothpaste may constitute a constitutional deprivation if plaintiff had to be treated by a dentist for bleeding and receding gums and tooth decay).  Under these authorities, Plaintiff's claim concerning the denial of property for four days fails to meet the objective component of the Eighth Amendment.

Plaintiff states that when his footlocker was opened, his property was covered in feces and bodily fluids.  However, Plaintiff fails to allege any facts indicating that Defendant Lafler was responsible for the condition of his property.  Therefore, Plaintiff fails to state an Eighth Amendment claim against Defendant Lafler.

### 3.    Defendants Fosburg and Schmalbach

Plaintiff claims that Defendants Fosburg and Schmalbach failed to respond to his health care kites in violation of the Eighth Amendment.  A claim for the deprivation of adequate medical care has an objective and a subjective component.

14

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).  Obviousness, however, is not strictly limited to what is detectable to the eye.  Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear.  *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks

omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

Plaintiff asserts that he kited Defendant Fosburg on November 14, 2023, and Defendant Schmalbach on November 16, 2023, and that neither responded to his kites.  However, Plaintiff fails to allege facts showing that Defendants Fosburg and Schmalbach actually received those kites and disregarded them or were even aware of them.  To the extent that Plaintiff claims he was seen two weeks later but never received effective treatment for his maladies, Plaintiff fails to allege that either Defendant Fosburg or Defendant Schmalbach were involved in his medical care.  Therefore, because Plaintiff's claims against Defendants Fosburg and Schmalbach are entirely conclusory, the Court will dismiss those claims.

### B.    Retaliation

Plaintiff asserts that Defendant Shinabargar retaliated against him for threatening to file a grievance. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v.*

*Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that he told Defendant Shinabarger that because he was refusing to address poor conditions in Plaintiff's cell, Plaintiff would be writing a grievance on him.  (ECF No. 1, PageID.6.)  Defendant Shinabarger stated: "I don't give a f**k if you write a grievance, because if you do we won't clean sh*t, and since you wanna threaten me with a grievance, I'm not feeding you sh*t either and you can sleep without a mattress see how you like that concrete."  (*Id.* (asterisks added).) Defendant Shinabarger then shut Plaintiff's water off and told him that he could smell his own waste and said, "now grieve that n*gger."  (*Id.*, PageID.7 (asterisks added).)

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form."  *Holzemer v.*

*City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Plaintiff's allegations, if true, sufficiently support a finding that he was engaged in protected conduct for purposes of a retaliation claim.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Plaintiff's allegations that he was forced to stay in a filthy cell and that Defendant Shinabargar had the water in the cell turned off are sufficient to show that Defendant Shinabargar took an adverse action against him.

Therefore, the Court concludes that at this point in the litigation, Plaintiff's retaliation claim against Defendant Shinabargar is not properly dismissed.

## Conclusion

The Court will grant Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2). Having conducted the review required by the PLRA, the Court determines that Plaintiff's claims against Defendants Lafler, Fosburg, and Schmalbach will be dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Shinabargar, Fitzgerald, Sanborn,

Strickland, and Ortiz and his First Amendment retaliation claim against Defendant

Shinabargar remain in the case.

    An order consistent with this opinion will be entered.


Dated:  August 14, 2024          /s/ Phillip J. Green
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge