UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYREE J. CULBERSON #727861,

      Plaintiff,

                                   Hon. Phillip J. Green

v.

                                   Case No. 1:24-cv-00280

UNKNOWN SHINABARGAR, et al.,

      Defendants.

_____/

## OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 39). The parties have consented to proceed before the undersigned judicial officer for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). For the reasons discussed herein, Defendants' motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan, but the events underlying this lawsuit allegedly occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues Unknown Shinabarger, Unknown Fitzgerald, Unknown Ortiz, Unknown Sanborn, and Unknown Strickland in their individual capacities. (ECF No. 16, PageID.84).

In his amended complaint, Plaintiff alleges the following.  (ECF No. 16).  On November 13, 2023, Plaintiff was transferred to ICF and placed in Unit 1, Cell 28, "which was covered in feces, urine, and semen" on the "cell window, on the door with paper stuck to it, all on top and underneath the toilet, behind the toilet on the wall," and on "the concrete slab" that did not have a mattress.  (ECF No.  16, PageID.85).  Plaintiff notified Defendant Shinabarger, who "refus[ed] to help."  (*Id*.).  Plaintiff responded that he "would have to write a grievance on [Defendant Shinabarger]."  (*Id*.).  Defendant Shinabarger stated, "I don't give a f**k if you write a grievance, because if you do we won't clean sh*t, and since you wanna threaten me with a grievance, I'm not feeding you sh*t either and you can sleep without a mattress see how you like that concrete."  (ECF No.  16, PageID.85-86) (asterisks added).  Defendant Shinabarger then shut Plaintiff's water off, telling Plaintiff that now he could smell his own waste too and stating, "now grieve that, n*****."  (ECF No.  16, PageID.86) (asterisks added).

At some point that day, Plaintiff "stopped Defendant Fitzgerald on his round" and "made him aware of the cell condition," "the fact that [Plaintiff] hadn't eaten," and that he "had no mattress."  (ECF No. 16, PageID.87).  Defendant Fitzgerald responded, "Look, I'm not your rock officer," and walked away. (*Id*.).

Later that day, Plaintiff informed Defendant Ortiz of the condition of the cell. (ECF No.  16, PageID.86).  Defendant Ortiz replied, "I'm not helping you, [you're] just going to have to suck it up."  (*Id*.)  Afterwards, Plaintiff also stopped Defendant Strickland, notifying him of the condition of the cell and requesting a mattress.  (*Id*.).

2

Defendant Strickland stated that he "didn't have any [mattresses] on hand" and that Plaintiff's cell "should have been cleaned before [he] arrived." (*Id.*). Defendant Strickland also told Plaintiff, "I can't help but think [you're] bullshitting me." (*Id.*). That night, Plaintiff threw up and had "excruciating migraines." (*Id.*).

The next morning, Plaintiff stopped Defendant Sanborn, informing him of the condition of the cell. (*Id.*). Defendant Sanborn told Plaintiff that "the porter should have cleaned the cell before" Plaintiff's arrival and that there was nothing he could do "about the mattress at the time." (*Id.*). After Plaintiff further argued and pleaded for help," Defendant Sanborn asked Plaintiff, "Do you have legal mail? Because if not I'm gonna have to move on." (*Id.*). Defendant Sanborn then "walked off" when Plaintiff reminded him that "he had yet to receive any property," including shower shoes and toiletries. (ECF No.  16, PageID.87).

On November 14, 2023, Plaintiff began to suffer from pain in his hips and lower back, as well as migraines. (ECF No.  16, PageID.88). On November 16, 2023, Plaintiff developed "a burning rash between [his] thighs," and he was "unable to get off the bunk" because of the pain in his lower back, hips, and ribs. (ECF No.  16, PageID.88-89).

Between November 14, 2023, and November 16, 2023, Plaintiff "repeatedly stop[p]ed Defendant Shinabarger," explaining that he had yet to receive his property. Plaintiff did not have towels, a "toothbrush, toothpaste, shower shoes, [or] underwear." (ECF No.  16, PageID.87). Defendant Shinabarger "ignored" Plaintiff

"for several rounds" until he stated, "How many times have I told you, you don't have sh\*t coing from us, we hate inmates with assaults on officers in their file."  (*Id.*).

Plaintiff received his property on November 17, 2023, by way of a padlocked footlocker in his cell.  (*Id.*).  Plaintiff asked Defendant Sanborn to remove the padlock, requiring a key, which he did.  (ECF No.  16, PageID.88).  When Plaintiff opened the footlocker, "[t]here was fecal matter, in a puddle of urine and semen with maggots and flies all in it."  (*Id.*).  At this point, Defendant Sanborn moved Plaintiff to a different cell that had a mattress.  (*Id.*).  Cell 28 was not cleaned until November 20, 2023.  (*Id.*).

In January 2024, Plaintiff" noticed a small knot on his forehead," resembling a pimple.  (ECF No.  16, PageID.89).  By July 2024, the knot grew "and began to protrude."  (*Id.*).  Plaintiff's mother purportedly spoke with "a family doctor" over the phone, who told Plaintiff's mother that it was "highly probable" that the "growth was caused by "the [i]ntense trauma" and "extreme level of stress" he endured.  (*Id.*).  Plaintiff asserts that "the growth is causing or is the result of the migraines" that occurred since his time in Cell 28 and that the growth was "caused by the extreme trauma and stress these officers bestowed upon [him] over a five[-]day period."  (*Id.*).

Plaintiff initiated this action on March 18, 2024.  (ECF No. 1).  The Court screened out several claims and Defendants.  (ECF No. 5, 6).  Plaintiff then filed an amended complaint.  (ECF No. 16).  The remaining Defendants now move for summary judgment.  (ECF No. 39).  Plaintiff responded to the motion.  (ECF No. 46).

Defendants replied.    (ECF No. 47).    The Court finds that oral argument is unnecessary.  *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."  *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."  *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).  The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Amini*, 440 F.3d at 357.  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence," establishing that "there is a genuine issue for trial."

5

*Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).  Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."  *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Daniels*, 396 F.3d at 735.  Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law."  *Harden*, 993 F.3d at 474.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I.    Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. U.S. CONST. amend. VIII. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.' " *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* "Allegations about temporary inconveniences . . . do not demonstrate that the conditions fell beneath the minimal civilized measure of life's

necessities as measured by a contemporary standard of decency." *Taylor v. Torok*, No. 1:21-CV-779, 2021 WL 6143635, at \*9 (W.D. Mich. Dec. 30, 2021).

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with " 'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff alleges that his cell "was covered in feces, urine, and semen" on the "cell window, on the door with paper stuck to it, all on top and underneath the toilet, behind the toilet on the wall," and on "the concrete slab" meant for a mattress for several days between November 13, 2023 and November 17, 2023. (ECF No. 16, PageID.85). He also asserts that he missed meals,[1] that his water was shut off for two to three days, and that he was not provided with a mattress, hygiene items, or a change of clothes for multiple days. (ECF No. 16, PageID.90).

In support of their motion for summary judgment, Defendants provided evidence through a work order, Plaintiff's medical kites, Unit 1 logbook entries, and affidavits that Defendant's cell could not have been covered in feces to the extent that he alleges. Nick Smith, a plumber at ICF, averred that he unclogged the toilet in Cell 28 the morning of Plaintiff's arrival after receiving a work order, and that the cell "could not have been covered in feces . . . because [he] would remember it"; although he did "not have an independent recollection" of unclogging the toilet in Cell 28 because that type of maintenance request is "very common." (ECF No. 40-9, PageID.286). The submitted work order is consistent with Smith's affidavit. (ECF No. 40-10, PageID.289). Additionally, John Kelley stated in an affidavit that he conducted a "Unit 1 facility inspection" on the morning of Plaintiff's arrival and that "[i]f Cell 28 had been covered in fees at the time of [his] inspection, [he] would have

---

[1] Plaintiff does not assert how many meals he missed or how long he went without eating after his arrival on November 12, 2023. At most, Plaintiff alleges that he told Defendant Fitzgerald the day after his arrival that he had not yet eaten. (ECF No. 16, PageID.87).

noticed it and immediately ensured that the cell was cleaned and disinfected." (ECF No. 40-11, PageID.292-93). Similarly, Meghan Jansen, a psychologist at ICF, who did rounds of Unit 1 on the mornings of November 13, 2023, and November 14, 2023, testified that she did "not have an independent recollection" of these rounds, but, if she "had witnessed Cell 28 to be covered in feces, [she] would have immediately reported it to facilitate the cell being cleaned and disinfected." (ECF No. 40-13, PageID.302). Jansen's testimony is consistent with the Unit 1 logbook. (ECF No. 40-12, PageID.296-97). Defendant Sanborn testified that, "[a]t no point while Plaintiff was housed in Cell 28 did [he] observe the cell to be covered in feces." (ECF No. 40-7, PageID.279). Defendants also provided two medical kites from Plaintiff regarding his alleged injuries on November 14, 2023, and November 16, 2023, that notably do not mention the conditions of his cell but his belief that he threw up multiple times because he "seem[ed] to have contract[ed] a bug." (ECF No. 40-15, PageID.308-09).

The Court is left with the parties' competing evidence. Plaintiff's affidavit mirrors the allegations in his complaint. (ECF No. 46-1, PageID.388). Likewise, Plaintiff's deposition testimony largely mirrors the allegations in his complaint. (ECF No. 40-2, PageID.205-56). Through their submitted affidavits, as described above, Defendants dispute Plaintiff's version of events and specifically deny that Plaintiff's cell was covered in feces. (ECF No. 40-7, PageID.279). These factual disputes are for a jury to resolve. Accordingly, the Court will deny Defendant's motion for summary judgment as to Plaintiff's Eighth Amendment claim regarding the feces in his cell.

10

Plaintiff's remaining conditions-of-confinement allegations fail, however, to rise to the level of Eighth Amendment violations.  Regarding the water-shut-off claim, Defendants provided evidence through Defendant Shinabargar's affidavit that he did not shut off Plaintiff's water.  (ECF No. 40-19, PageID.330).  But even if Plaintiff's water was shut off, Plaintiff testified at his deposition that his water was restored as early as his second day in Cell 28.  (ECF No. 40-2, PageID.216-17).  This does not arise to the level of an Eighth Amendment violation.  *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (holding that verbal harassment, denial of seven meals over six days, and turning off water to inmate's cell on one occasion did not rise to the level of a constitutional violation).

Next, Plaintiff alleges that he missed multiple meals across two days, but "the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation."  *Stone v. Larson*, No. 2:20-CV-00144, 2022 WL 4369932 at *4 (W.D. Mich. Aug. 26, 2022); *see also Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation).  Additionally, Plaintiff alleged that he did not have a mattress from November 13, 2023, to November 17, 2023.  (ECF No. 16, PageID.90). But "[t]he level of discomfort and injury one might expect a prisoner to suffer by virtue of sleeping without a mattress for a few days simply cannot support a claim that the

11

prisoner has been denied 'the minimal civilized measure of life's necessities.' " *Lee v. Wagner*, No. 1:17-CV-474, 2017 WL 2608752, at *4 (W.D. Mich. June 16, 2017) (quoting *Rhodes*, 452 U.S. at 347).

Plaintiff also alleges that Defendants deprived him of hygiene items and a change of clothing for five days, and that they ignored his requests for such.  (ECF No. 16, PageID.90).  "Denials of hygiene items for short periods of time constitute temporary inconveniences that do not rise to the level of an Eighth Amendment violation." *Parks v. Rewerts*, No. 1:25-CV-394, 2025 WL 1715751, at *14 (W.D. Mich. June 20, 2025).  *See also Taylor v. Larson*, 505 F. App'x 475, 478 (6th Cir. 2012).  "In this Circuit, a prisoner's claim of denial of clean clothes for a brief time fails to state an Eighth Amendment violation." *Nettles v. Unknown Party #1*, No. 2:21-CV-218, 2022 WL 782606 (W.D. Mich. Mar. 15, 2022) (quotation marks and citation omitted). *See also Walker v. State Dept. of Corr.*, No. 98-6586, 2000 WL 32057, *1-2 (6th Cir. Jan. 7, 2000).  Plaintiff has merely alleged temporary inconveniences that do not rise to the level of Eighth Amendment violations.  Accordingly, Defendants are entitled to summary judgment on these remaining claims.[2]

## II.    First Amendment Retaliation

Plaintiff asserts that Defendant Shinabargar unlawfully retaliated against him for "express[ing] his right to participate in the grievance process" by refusing to

---

[2] To the extent Plaintiff reasserts in his amended complaint his Eighth Amendment claims against Defendant Lafler, the Court need not address these claims as they were previously dismissed on screening.  (*See* ECF No. 5, 6).

12

provide meals or a mattress and by shutting off his water in violation of his First Amendment rights.  (ECF No. 16, PageID.90).  To prevail on his retaliation claim, Plaintiff must satisfy three elements: (1) he was engaged in constitutionally protected conduct; (2) Defendant took adverse action against him which would deter a person of ordinary firmness from continuing to engage in protected conduct; and (3) the adverse action was motivated by Plaintiff's protected conduct.  *See Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010).

### A.  Protected Conduct

Plaintiff argues that his threat to file a grievance against Defendant Shinabargar for the condition of his cell constituted protected conduct.  Defendant Shinabargar responds that the threat does not constitute protected conduct because it contained false allegations and thus was frivolous.  *See Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011) ("[A]n inmate's pursuit of grievances against prison officials can constitute protected conduct for purposes of a retaliation claim, but 'only to the extent that the underlying claims ha[ve] merit.'" (second alteration in original) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000))).

As evidence, Defendant Shinabargar provided his affidavit, stating, *inter alia*, that he "did not turn off Plaintiff's water" nor "threaten or discourage Plaintiff from filing a grievance in any manner."  (ECF No. 40-19, PageID.330).  In response, Plaintiff points to a grievance he filed about his cell conditions and Defendant Shinabargar's denial of his request for help.  (ECF No. 40-16, PageID.313).  Further, Plaintiff's affidavit attesting to the truth of his allegations against Defendant

13

Shinabargar creates a genuine issue of fact as to the frivolousness of his grievance. Additionally, Defendants' claim that Plaintiff backdated his grievance despite Plaintiff's testimony that he handed it to Defendant Sanborn on November 14, 2023, also creates a genuine issue of fact as to whether Plaintiff's administrative remedies were properly exhausted.

### B. Adverse Action

Defendant Shinabargar does not dispute that turning off Plaintiff's water supply and not providing a mattress or meals could constitute adverse actions; rather, he denies that these actions occurred and points to his own affidavit as evidence. But this argument mistakes the purpose of summary judgment. Defendant's affidavit when paired with Plaintiff's affidavit and testimony create a dispute of fact that cannot be resolved at this stage. Plaintiff's allegations are not "fanciful, fantastic, delusional, wholly incredible, or irrational." *Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004). Thus, Plaintiff has established the second element of a prima facie retaliation case.

### C. Causation

Defendant Shinabargar argues that Plaintiff cannot establish a causal connection between the protected conduct and the alleged adverse actions. "A plaintiff successfully demonstrates a causal connection between the adverse action and the protected conduct by offering direct or circumstantial evidence indicating that the protected conduct was a substantial or motivating factor behind the adverse action against plaintiff." *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th

14

Cir. 2010).    Specifically, Defendant Shinabargar argues that he was encouraging Plaintiff to file a grievance when he allegedly stated, "now grieve that, n******" to Plaintiff after shutting off his water. (ECF No. 40, PageID.195-96).  Defendant points to *Alexander v. Kind*, No. 2:16-CV-98, 2018 WL 4929754 (W.D. Mich. Oct. 11, 2018), in support of his argument, in which the Court considered the fact that the defendant "encouraged [the] [p]laintiff to file a grievance" after the alleged adverse actions in dismissing the plaintiff's retaliation claim.  Although Defendant Shinabargar denies taking the adverse actions, acting with any retaliatory motive, or using a racial epithet, as discussed above, Plaintiff's evidence contradicts these assertions, so he has sufficiently created a factual dispute.    Thus, Defendants are not entitled to summary judgment on Plaintiff's retaliation claim.

### III.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity from Plaintiff's claims.  Qualified immunity protects government officials carrying out discretionary duties from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Defendants contend that they are entitled to qualified immunity because Plaintiff has not established violations of his Eighth Amendment rights.  As discussed above, the Court rejects this argument.  The Court also finds that Plaintiff has sufficiently alleged that the

rights at issue were clearly established.[3]  A reasonable officer would know that keeping a prisoner in a feces-covered cell for several days violates his Eighth Amendment rights.  *See Taylor v. Riojas*, 592 U.S. 7 (2020) (per curiam) (keeping prisoner in feces-covered cell for six days violated clearly established rights). Accordingly, Defendants are not entitled to qualified immunity.

## CONCLUSION

For the reasons stated herein, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment (ECF No. 39).  Plaintiff's surviving claims are his First Amendment claim and Eighth Amendment claim arising from the allegation of feces in his cell.  The Court will grant summary judgment to Defendants as to Plaintiff's remaining Eighth Amendment claims, except for the claims stemming from his allegation of feces in his cell.

Dated: February 18, 2026                          /s/ Phillip J. Green
                                                  PHILLIP J. GREEN
                                                  United States Magistrate Judge

---

[3] Because Defendants only raise qualified immunity as to the Eighth Amendment claims, the Court will address only those claims here.

16